```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
AMERICAN FEDERATION OF STATE                                :
COUNTY AND MUNICIPAL EMPLOYEES                              :
DISTRICT COUNCIL 37 HEALTH &                                :    12 Civ. 2238 (JPO)
SECURITY PLAN, and SERGEANTS                                :
BENEVOLENT ASSOCIATION HEALTH AND                           :    OPINION AND ORDER
WELFARE FUND, individually and on behalf of                 :
all others similarly situated,                              :
                                      Plaintiffs,           :
                                                            :
                  -v-                                       :
                                                            :
BRISTOL-MYERS SQUIBB CO. and OTSUKA                         :
AMERICA PHARMACEUTICAL, INC.,                               :
                                     Defendants.            :
                                                            :
------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

This case arises from an ongoing dispute between health insurers, such as Plaintiffs, who want to dissuade patients from selecting pricey branded drugs, and branded drug manufacturers, such as Defendants, who seek the opposite result. Plaintiffs seek leave to file an Amended Complaint after all but one of the counts in their original Complaint were dismissed with prejudice. In the Order on the Motion to Dismiss, this Court granted Plaintiffs "leave to re-plead with respect to a portion of their RICO claim." *Am. Fed'n of State, Cnty. & Mun. Emp. Dist. Council 37 Health & Sec. Plan v. Bristol-Myers Squibb Co.*, 12 Civ. 2238 (JPO), 2013 WL 2391999, at *1, --- F. Supp. 2d --- (S.D.N.Y. June 3, 2013) [hereinafter *AFSCME*]. In response, Plaintiffs have submitted a proposed Amended Complaint in which they eliminated the preserved portion of their RICO claim, repackaged the dismissed portions of that claim, and added a new claim of tortious interference with contract.

For the reasons that follow, the Motion for Leave to File an Amended Complaint is denied with respect to the RICO claim and is granted with respect to the new claim of tortious interference with contract.

I.   Background

   A.   Allegations in the Original Complaint

Plaintiff American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan administers self-insured health and welfare benefits, including a prescription drug benefit plan, to over 125,000 members. Plaintiff Sergeants Benevolent Association Health and Welfare Fund is an employee welfare benefit plan that provides comprehensive health care benefits to approximately 12,000 individuals. Both plans contain cost-sharing provisions that charge patients higher co-pays for costly branded prescriptions than for lower-cost, generics or alternative treatments. The cost-sharing plans encourage patients to choose cheaper treatments, thereby lowering insurers' costs.

Defendants Bristol-Myers Squibb Co. and Otsuka American Pharmaceutical, Inc. jointly market the branded drug Abilify, which treats schizophrenia. Since 2010, Defendants have provided co-pay subsidies directly to patients. These subsidies reduce or eliminate patients' out-of-pocket costs for Abilify, effectively incentivizing patients to choose Abilify over lower-cost alternatives. The subsidies encourage patients to choose more expensive treatments, thereby raising insurers' costs.

Plaintiffs brought this suit to challenge Defendants' co-pay subsidies. Their original Complaint alleged substantive and conspiracy violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and commercial bribery in violation of the Robinson-Patman Act, 15 U.S.C. § 13. Plaintiffs alleged three types of fraud to support their

2

RICO claims: first, Plaintiffs alleged that Defendants misrepresented Abilify's price by charging insurers the full price for the drug without indicating when a co-pay subsidy had been applied ("misrepresentation theory"); second, Plaintiffs alleged that Defendants' subsidies fraudulently waived patients' co-pay obligations ("waiver theory"); and, third, Plaintiffs alleged that Defendants' subsidies fraudulently inflated benchmark prices, which determine how much insurers pay for Abilify ("benchmark theory").

B.     Motion to Dismiss

This Court previously dismissed Plaintiffs' commercial bribery claim and the RICO allegations based on the misrepresentation theory and the waiver theory. *AFSCME*, 2013 WL 2391999. The Court dismissed the commercial bribery claim because Plaintiffs failed to allege the necessary fiduciary relationship between insurers and patients. The Court dismissed the RICO claims based on the misrepresentation theory in part because there is no duty to report the financial source of patients' co-pays. While Plaintiffs may want to know when co-pay subsidies are used, a patient can pay a co-pay with money from "his rich uncle, or a stranger on the street," or a pharmaceutical company's subsidy without triggering any reporting obligations or committing fraud. *Id.* at *6. The original source of a patient's co-pay is not material and thus, no misrepresentation occurs in the omission of that immaterial fact. Finally, the Court dismissed the RICO claims based on the waiver theory because, among other reasons, the co-pay requirement was never actually waived. All of these claims and theories were dismissed with prejudice.

The Court granted leave to file an Amended Complaint "solely as to the benchmark theory of fraud" because the Complaint did not contain enough detail for the Court to assess the legal sufficiency of that theory. *Id.* at *12. Reporting agencies publish benchmark prices that

determine the amount that insurers pay pharmacies for drugs like Abilify. Plaintiffs alleged that Defendants committed mail and wire fraud because their payment of co-pay subsidies led to misrepresentations in Abilify's benchmark price. However, Plaintiffs failed to allege any specifics, including how two critical benchmarks, the average wholesale price ("AWP") and the wholesale acquisition price ("WAP"), are calculated. Based on the "vague and general pleadings, it [was] impossible . . . to ascertain and evaluate Plaintiffs' theories of fraud and causation." *Id.* While the thin pleadings on the benchmark theory suggested that Plaintiffs may not be able to allege enough facts to support their RICO claims on this theory, the Court granted leave for Plaintiffs to "add the requisite particularity," if possible. *Id.*

     **C.**    **Motion for Leave to Amend**

Within the allotted time, Plaintiffs filed a proposed Amended Complaint along with a Motion for Leave to Amend the original Complaint. However, the proposed Amended Complaint did not add more particularity to the preserved benchmark theory of fraud; instead, it eliminated that theory. Paragraph 126 of the original Complaint alleged, as part of its RICO claim, that "[t]he copay subsidy enterprise engaged in an intentional scheme to defraud plaintiffs . . . by reporting benchmark prices to reporting agencies while failing to account for the routine waiver of co-pays." The corresponding section of the proposed Amended Complaint lacks similar allegations. Additionally, the Amended Complaint eliminates paragraphs 57 and 58 of the original Complaint, which contained all of the facts supporting the benchmark theory. Tellingly, "[t]he word 'benchmark' does not appear anywhere in the Amended Complaint—and neither do the [terms] 'AWP' or 'WAC.'" (Dkt. No. 59 ("Def.'s Opp. Mem.") at 2.)

Many paragraphs of the proposed Amended Complaint are identical to or correlate closely with paragraphs that supported the dismissed misrepresentation theory in the original

4

Complaint.  In the proposed Amended Complaint, the first two paragraphs that appear under the subheading "The co-pay subsidy enterprise engaged in schemes to defraud" are modified from paragraphs that summarized and presented the misrepresentation theory of fraud in the original Complaint.  However, the proposed Amended Complaint omits the language about the subsidies "causing [Plaintiffs] to pay an inflated rate for each subsidized prescription," which summarized the benchmark theory of fraud in the original Complaint.[1]  Otherwise, despite some cosmetic modifications, the fraud allegations remain fundamentally unchanged.

---

[1] Paragraph 124 of the original Complaint states:

> The co-pay subsidy enterprise engaged in an intentional scheme to defraud plaintiffs and the class by interfering with their cost-sharing provisions, *causing them to pay for prescriptions of the subsidized drug that they would not otherwise have paid for*, and causing them to pay an inflated rate for each subsidized prescription. These transactions necessarily involve the use of the wires.

(emphasis added).  In comparison, paragraph 136 of the proposed Amended Complaint states:

> The co-pay subsidy enterprise engaged in an intentional scheme to defraud Plaintiffs and the class by interfering with their cost-sharing provisions, enforced through the PBMs' contracts with network pharmacies, causing them to pay undiscounted rates for subsidized drugs and to pay for more prescriptions of the subsidized drugs than they would have paid absent the co-pay subsidy enterprise's substantive RICO violations. These transactions necessarily involve the use of the wires.

Additionally, Paragraph 125 of the original Complaint is nearly identical to Paragraph 137 of the proposed Amended Complaint.  Paragraph 125 states:

> The co-pay subsidy enterprise engaged in an intentional scheme to defraud plaintiffs and the class by causing misrepresentations to be made via the wires at the time of the point of sale transaction — that is, when the member presents the co-pay card at the pharmacy — when, as instructed by the defendants, the pharmacist electronically charges the health benefit provider the full

5

Finally, the proposed Amended Complaint drops the dismissed commercial bribery claim and adds a new tortious interference with contract claim.

## II.     Legal Standard

Federal Rule of Civil Procedure 15 states that where leave to amend a complaint is not granted as a matter of course, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  The Supreme Court has clarified that rule and identified circumstances where leave should not be granted:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

Defendants argue that leave to amend the RICO claim would be futile because the proposed Amended Complaint merely repackages the previously dismissed misrepresentation theory.  "[W]here amendment would be futile, denial of leave to amend is proper." *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006), *overruled on other grounds*

---

> benchmark price without accounting for the existence of co-pay subsidies (as instructed by defendants). These transactions necessarily involve the use of the wires.

In comparison, paragraph 137 of the proposed Amended Complaint states:

> The co-pay subsidy enterprise engaged in a separate but related intentional scheme to defraud Plaintiffs and the class by causing misrepresentations to be made via the wires in connection with the point-of-sale transactions. The instructions to pharmacies regarding how co-pay subsidies should be processed, as well as the pseudo-adjudication transactions themselves, necessarily involve the use of the wires.

by *F.T.C. v. Actavis, Inc.*, 133 S. Ct. 2223 (2013).  However, "a proposed claim may be found futile only where it is clearly frivolous or legally insufficient on its face."  *Circle Line Sightseeing Yachts, Inc. v. Circle Line-Statute of Liberty Ferry, Inc.*, No. 01 Civ. 9788 (NRB), 2003 WL 253094, at *1 (S.D.N.Y. 2003) (internal quotations omitted).  Defendants bear the burden of demonstrating futility.  *See Sterling v. Interlake Indus.*, 154 F.R.D. 579, 589 (E.D.N.Y. 1994) ("The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial.")

**III.    Discussion**

    **A.    Leave to Amend the RICO Claim**

Denial of leave to amend the RICO claim is warranted based on the face of the proposed Amended Complaint.  The high standard for futility is met where Plaintiffs try to re-plead claims that have been dismissed with prejudice without adding any allegations that would alter the analysis on a Motion to Dismiss.  *See In re Lehman Bros. Mortgage-Backed Sec. Litig.*, 650 F.3d 167, 188 (2d Cir. 2011) ("[Plaintiffs] fail to identify new facts that might redress the complaints' noted deficiencies. Accordingly, we reject as without merit plaintiffs' challenge to the denial of leave to amend."); *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 76 (2d Cir. 1998) (affirming denial of leave to amend where Plaintiff "made no showing that he would be able to amend his complaint in a manner that would survive dismissal"), *cert. denied*, 525 U.S. 1103 (1999).

Plaintiffs' misrepresentation theory of fraud was dismissed with prejudice because of substantive legal problems, not merely because it was inartfully pleaded.  Plaintiffs' original Complaint failed to allege any duty to identify the source of funding for patients' co-pays, and

their proposed Amended Complaint replicates that failure.[2]  Due to this substantive flaw, amendment would be futile.  The Second Circuit has ruled that where "[t]he problem with [Plaintiff's] causes of action is substantive . . . better pleading will not cure it.  Repleading would thus be futile. Such a futile request to replead should be denied."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).[3]

      Plaintiffs try to dodge the substantive problems with their proposed pleadings by arguing over semantics.  They claim that their "benchmark theory was not a theory of fraud . . . but rather a theory of injury."  (Dkt. No. 58 at 2 ("Pl.'s Mem.")).  Regardless of how Plaintiffs choose to characterize the benchmark theory, the Court previously held that the misrepresentation theory fails as a matter of law.  Plaintiffs did not seek reconsideration of that legal conclusion and they do not challenge that conclusion now.  By characterizing the benchmark theory as a theory of injury rather than a theory of fraud, Plaintiffs do not revive the misrepresentation theory; rather,

---

[2] Although Plaintiffs have amplified their argument that pharmacies misrepresented the nature of co-pay subsidies by coding them as secondary insurance, Plaintiffs have still failed to allege the materiality of that coding choice.  Insurers must pay the residual cost of prescription drugs regardless of whether co-pay subsidies are coded as subsidies or as secondary insurance.  If pharmacies coded the subsidies explicitly as co-pay subsidies, the insurer would have more information but the same obligation to pay for the prescription.  As one commentator noted, "if an insurer wants to end the use of [co-pay subsidies], it will have to include a provision in its insurance contracts barring their use."  Kate Greenwood, *The Co-Pay Coupon Controversy: Time for Détente?,* Health Reform Watch (November 26, 2013), *http://www.healthreformwatch.com/2013/11/26/the-co-pay-coupon-controversy-time-for-detente/*, *cross-posted at https://blogs.law.harvard.edu/billofhealth/2013/11/26/the-co-pay-coupon-controversy-time-for-detente/*.  Under those circumstances, an insurer would not have to pay for prescriptions involving co-pay subsidies, and coding a subsidy as secondary insurance would have material effects.  No such provision was alleged here; therefore, Plaintiff's allegations of improper coding fail.

[3] It is worth noting that *Cuoco* was a *pro se* case, where the Complaint was read liberally and with a level of solicitude toward the plaintiff's potential claims that is not warranted in this case.

they concede that they have no theory of fraud to support their RICO claims.[4]  Accordingly, the motion to amend the RICO claims is denied as futile.

### B.     Tortious Interference with Contract

Plaintiffs' proposed Amended Complaint also raises a new claim of tortious interference with contract.  *See* Def.'s Opp. Mem. at 5 ("The proposed Amended Complaint alleges for the first time that there are contracts between the PBMs and retail pharmacies . . . [and] that the Defendants are inducing the pharmacies to breach those contracts.").  This claim was not reviewed in the prior Motion to Dismiss and Defendants' arguments about the claim's plausibility are more appropriately reserved for a Rule 12(b)(6) motion.  Accordingly, the Court grants leave for Plaintiffs to file an Amended Complaint that asserts a claim for tortious interference with contract.

## IV.    Conclusion

For the foregoing reasons, Plaintiffs' Motion for Leave to File an Amended Complaint is DENIED with respect to the RICO claim and is GRANTED with respect to the tortious interference with contract claim.  Plaintiffs are hereby granted leave to file an Amended Complaint asserting only the tortious interference claim by December 27, 2013.

The Clerk is directed to close Docket Entry No. 57.

SO ORDERED.

Dated: New York, New York
       December 9, 2013

_____
J. PAUL OETKEN
United States District Judge

---

[4] In choosing this course of action, Plaintiffs also fail to cure the deficiencies in their benchmark theory.